**IN THE UNITED STATES DISTRICT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

RAYMOND JAMES FINANCIAL
SERVICES, INC.,

     Plaintiff,

v.                                        Civil Action No. 3:07cv28

THOMAS W. BISHOP,
<u>et</u> <u>al.</u>,

     Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the AMENDED MOTION TO VACATE an arbitration award filed by Raymond James Financial Services, Inc. ("Raymond James") (Docket No. 2). The parties have briefed and argued the motion. Subsequently, because the award was confusing and it was difficult to ascertain the meaning of the award, the Court called for briefing addressed to whether the award could be remanded to the arbitrator for further proceedings, and, if so, whether a remand was appropriate in this case.

The defendants, Steven E. Hamant and Timothy E. Scanlon, filed oppositions to the motion to vacate. The defendant, Thomas W. Bishop, filed a pleading opposing the motion to vacate into which was incorporated a motion to dismiss the

motion to vacate under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Alternatively, Bishop sought summary judgment under Fed. R. Civ. P. 56.[1]   The defendants also filed motions for sanctions against the lawyer representing Raymond James and his law firm, and against Raymond James.

For the reasons set forth below, the award will be remanded to the arbitrator for further proceedings and all other motions will be denied without prejudice.

## BACKGROUND

Raymond James is a financial services company that is a member, and operates as a broker-dealer under the rules, of the National Association of Securities Dealers ("NASD").   In March 2001, Bishop, Hamant and Scanlon left Josephthal & Company to join Raymond James.

On March 8, 2001, Hamant and Scanlon executed an FA Agreement by which each would be a financial advisor acting as an independent contractor (not as an employee) of Raymond James.   (Exs. 2 and 3).   Bishop, who was the manager of the

---

[1]   In fact, Bishop did not actually file motions.   Instead, he filed a memorandum which was partially captioned as alternative motions.   In the interest of efficiency, the Court will consider the memorandum as presenting both the motions and a supporting memorandum, notwithstanding the unorthodox approach reflected in Bishop's pleadings (which approach, of course, could be the basis for summary rejection of the unorthodox pleading).

office, executed, on July 13, 2001, an Independent Sales
Associate Agreement (Ex. 1) by which he became an independent
contractor (not an employee) of Raymond James. (Plaintiff's
Memorandum in Support Its of Motion to Vacate ("Pl.'s Mem.")
(Docket No. 25) Exs. 1-3). Some time after the Agreements
were signed, Defendants began operating a Raymond James
office, "Branch 67H," in suburban Richmond, Virginia.

The agreement signed by each Defendant contained the same
termination clause, to wit:

> "[e]ither party may terminate this Agreement
> by providing the other party no less than
> five (5) business days prior written notice
> of intent to terminate this Agreement."

(Pl.'s Mem. Exs. 1, 2, and 3 at ¶ 3). While termination
without cause required five business days prior notice, either
party also had the right:

> "to immediately terminate this Agreement
> immediately for cause in the event of a
> material breach of the Agreement, including
> but not limited to a failure to comply with
> any applicable laws, both federal and state,
> or any rule, regulation, or interpretation of
> the Regulatory Authorities [defined
> elsewhere] or policy of" Raymond James.

(Id.) The agreements also provided that disputes would be
arbitrated before the NASD, and indeed, as a member of the
NASD, Raymond James was required by the NASD's rules to

arbitrate all employment disputes pursuant to NASD arbitration.

In 2003 and 2004, persons associated with competing broker-dealers filed complaints against the Defendants. (Pl.'s Mem. Ex. 4 [Bishop]; Id. Ex. 8 at 2 ¶ 2 [Hamant and Scanlon]). At some point, a Raymond James in-house lawyer undertook to represent all of the Defendants in the NASD arbitration of these complaints. (Pl.'s Mem. Ex. 8 at 2 ¶ 2 [Hamant and Scanlon], 3 ¶ 5 [Bishop]). Also, without the Defendants' knowledge, Raymond James placed under "heightened supervision" the office in which the Defendants worked.

On April 27, 2004, a Raymond James officer gave the Defendants written notice that their agreements with Raymond James would terminate in five days. (Pl.'s Mem. Ex. 7). The termination date ultimately was extended to June 25, 2004, during which time "the Defendants . . . were given the opportunity to associate with other Raymond James branches . . . ." (Pl.'s Mem. at 3 ¶ 7). However, the Defendants did not end up "associating" at another Raymond James branch. (Id.).

After the termination, the in-house lawyer continued to represent the Defendants in the ongoing NASD arbitration between them and the third-party broker-dealer complainants. Those arbitrations were resolved favorably to Hamant and

4

Scanlon.   Thereafter, in late 2004, the Raymond James in-house lawyer terminated his representation of Bishop.   However, Raymond James subsequently settled the claim against Bishop without financial consequence to him.   Bishop retained, and paid the fee charged by, counsel who replaced the Raymond James in-house lawyer.

In August 2005, all three Defendants filed consolidated claims against Raymond James before the NASD.   (Pl.'s Mem. Exs. 5, 6).   The caption of the Statement of Claims filed in the arbitration lists all three Defendants as claimants. However, the text of the Statement of Claims makes no significant reference to either Hamant or Scanlon, focusing instead almost entirely on Bishop.[2]   Indeed, the background facts focus almost solely on what was alleged to have happened to Bishop.   Then, the articulation of the claims (¶¶ 14-17) seeks to characterize Raymond James' conduct as actionable without reference to any specific claimant.   The Statement of Claims concludes with a general statement of the amount of

---

[2]   Bishop's counsel in this action signed the Statement of Claims submitted in the NASD arbitration on behalf of all three claimants.   For reasons neither explained nor readily apparent, another lawyer later appeared to represent Hamant and Scanlon in the arbitration and that lawyer represents them in this action.

each claimant's damages without making any linkage between the asserted damages and the conduct attributed to Raymond James.

In sum, the Statement of Claims is a hodgepodge of conclusory, perjoratively presented factual allegations and legal theories that seem to have little, if any, relation to Hamant and Scanlon and that, as to Bishop, focus largely on his alleged abandonment during the third-party arbitration by the Raymond James in-house lawyer and on the termination of Bishop's employment with Raymond James.

The NASD arbitration panel held hearings for five days. The briefs filed in the arbitration and the damage evidence offered by Bishop, Hamant and Scanlon present the case principally as one in which the Claimants contend that they were wrongfully terminated and thereby suffered financial loss.  However, the briefs also discuss general, incidental contentions of other perceived wrongs, such as breaches of the Virginia Franchise law, breaches of unarticulated equitable precepts, and breach of generally asserted fiduciary duties. There is no discernable link between those theories and the damage evidence.

The arbitration award reflects the muddle created by the Claimants' arbitration briefs and the Statement of Claims. For example, in describing the arbitrators' view of the

claims, the award makes no effort to differentiate among the three claimants.  Instead, it recites a summary of the claims as if all three claimants had advanced the same claims and suffered the same kinds of damage, which the record shows not to be the case.

The record discloses that the claim presented by Bishop is substantially different from the claims by Hamant and Scanlon, but the claims of Hamant and Scanlon appear to be virtually identical.  However, in explaining the basis upon which the award was made, the written arbitration ruling makes no distinction among the three claimants, notwithstanding that the circumstances of Hamant and Scanlon in the arbitration, as shown by the record, were considerably different from the claims presented by Bishop.

The panel's summary of the "causes of action" reflects the conflation of concepts and claimants.  The panel's summary of the "causes of action" is set forth below verbatim:

- breach of fiduciary and legal duties

- violation of just and equitable legal principles of trade

- breach of promises and inducements

- interference with, and unlawful termination of, Claimants' prospective economic advantages

- interference with the performance of contractual promises and inducements

- tortious and deceitful termination of Claimants' legitimate and high business expectations;

- violation of statutory Virginia public policy set forth in Virginia Code § 13.1-558 [Virginia's Retail Franchising Act]

- common law and statutory conspiracy

Award p. 2. The award ends its recitation of the claims that the panel thought it was deciding by stating: "[t]he <u>causes of action relate to the termination of</u> Claimants' <u>employment</u> with Respondent." <u>Id.</u> (emphasis added).

The panel's statement of reasons for the award likewise reflects the conflation of claims and claimants. Indeed, it is no understatement to observe that the statement of reasons is convoluted and garbled in identifying the claim or claims upon which redress was granted, as well as the reasoning that was advanced to support the award. Of course, given the controlling legal principles in this circuit, the Court is obligated to make the best sense out of the arbitral decision that can be made without rewriting it or giving it a meaning that is not fairly inferable from the terms and text used by the arbitrators.

The starting point for that endeavor, of course, is the text of the award which is set forth in full below:

> Although Respondent did have some apparent reasons to be concerned about circumstances and the relationships between registered representatives in its Richmond, Virginia branch office #67H, among other factors leading to this decision, the Panel is of the opinion that Respondent engaged in the unauthorized practice of law by employing staff counsel to advise and represent these Claimants in their individual capacities.  Having assumed the role and responsibilities of legal counsel in relation to its registered representatives, Respondent is held to the highest ethical obligations and fiduciary duties that would apply to a lawyer and law firm duly licensed to practice law in the Commonwealth of Virginia and engaged in business dealings with its legal client.  This includes a duty to maintain the confidences and secrets of, and to maintain utmost loyalty to protect the interests of, each of these Claimants.  In addition, Respondent failed to act in accordance with the standards of business fairness and good faith required by NASD rules in not providing these Claimants with notice and warning that they were under a higher level of supervision to the extent stated in Respondent's own policies and procedures that its registered representatives should be entitled to rely upon, and in not providing the same notice and warning and in not sharing the communications between Respondent and these Claimants' legal counsel, who was also representing Respondent, regarding Respondent's higher lever of supervision of these Claimants and its intention to

> terminate its relationship with these
> Claimants.   There was possibly also a
> failure to communicate through and from
> common legal counsel the nature of
> separate settlement negotiations in
> another NASD arbitration.   The Panel
> also believed that in light of the above
> described high fiduciary duty and
> ethical obligations, that withdrawal of
> legal representation during a pending
> arbitration both prejudiced some or all
> Claimants' litigation interest and made
> their transfer to other Raymond James
> Financial Services, Inc. branch offices
> impossible as a practical matter.

Award, p. 3.   An effort to understand what the award means necessitates analyzing what the arbitrators said in explaining why they made it.

First, the award asserts that Raymond James "engaged in the unauthorized practice of law by employing staff counsel to advise and represent these Claimants in their individual capacities" in the arbitrations initiated by the competing brokers.   It is highly dubious that Raymond James engaged in the unauthorized practice of law merely by allowing an in-house lawyer to represent the Defendants in the NASD arbitration.   However, it is not necessary to assess the validity of the panel's conclusion on that point because a reasonable reading of the text requires the conclusion that the arbitrators did not predicate the award of compensatory

damages on the finding of "unauthorized practice of law" set forth in that sentence.

Second, the award expresses the view that the respondent [a corporation], having assumed the role and responsibilities of legal counsel as to the Claimants, is "held to the highest ethical obligations and fiduciary duties that would apply to a lawyer and law firm duly licensed to practice law in the Commonwealth of Virginia and engaged in business dealings with its legal client." That proposition is even more dubious than the first one because it was the in-house lawyer, not Raymond James, to whom any ethical duty attached. But, assuming, without deciding, that the panel's premise was correct, it is also clear that the arbitrators did not predicate an award of compensatory damages on the finding in that sentence.

Third, the award describes the "highest ethical obligations and fiduciary duties" referred to in the preceding sentence as including "a duty to maintain the confidences and secrets of, and to maintain utmost loyalty to protect the interest of each of these Claimants." Whatever else might be said of this conclusion, the award does not appear to predicate a finding of liability on the breach of any of those perceived duties.

Moreover, when considered as an integrated whole, those three sentences do not appear to be the basis for imposing liability or for the determination of compensatory damages made in the award. Hence, although it is difficult to understand why those sentences are even in the ruling, it is not necessary further to assess their meaning.

The arbitrators then shift away from the alleged unauthorized practice of law notion and address the standards of "business fairness and good faith required by NASD rules." In particular, the ruling specifies two ways in which Raymond James was thought to have failed to have acted with fairness and good faith. First, Raymond James is said to have failed "in not providing these Claimants with notice and warning that they were under a higher level of supervision to the extent stated in Respondent's own policies and procedures that its representatives should be entitled to rely upon." Second, another failure to act in accordance with the NASD standards was found to be "in not providing the same notice and warning and in not sharing the communications between Respondent and these Claimants' legal counsel, who was also representing Respondent, regarding Respondent's higher level of supervision of these Claimants and its intention to terminate its relationship with these Claimants."

It is difficult to understand those statements either taken alone or in consideration of the record evidence. The statements could be construed to be a finding of a freestanding violation of some NASD rules of fair dealing and good faith. If, however, that is the intended meaning of the statements, then the task on judicial review of the award is to assess the award in perspective of the contention by Raymond James that the only claimed or proved damages were those related to termination of employment, not to any violation of NASD rules.

On the other hand, the statements could be construed to mean that Raymond James wrongfully terminated the Defendants' employment or breached the employment contract by not providing notice and warning of higher supervision and in not otherwise giving notice of the intent to terminate the employment. If that is what was intended, the task on judicial review would be to ascertain whether, as Raymond James contends, the award is contrary to law because it imported, into the contractual termination provision, terms to which the parties did not agree.

It, of course, is possible that those statements are intended to have some other significance. If so, the task on judicial review would be a different one.

13

Fourth, the award observes that "[t]here was <u>possibily</u> also a failure to communicate through and from common legal counsel the nature of separate settlement negotiations in another NASD arbitration." That speculation could not, as a matter of law, constitute the basis for a supportable finding of liability or the imposition of compensatory damages.

Finally, the ruling says that, "in light of the above described high fiduciary duty and ethical obligations, that withdrawal of legal representation during a pending arbitration both prejudiced some or all Claimants' litigation interest and made their transfer to other Raymond James Financial Services, Inc. branch offices impossible as a practical matter." This sentence refers back to the fiduciary duties assertedly assumed because an in-house Raymond James lawyer represented the Defendants in the arbitration brought by the competing brokers.

The principal problem with the first finding in that sentence is that it simply cannot relate at all to Hamant and Scanlon because the record makes clear that their interests were not prejudiced by any act or omission on the part of the Raymond James in-house lawyer. To the contrary, the separate arbitration was, as to them, terminated favorably, and the in-house Raymond James lawyer represented Hamant and Scanlon in

achieving that desirable result.[3]   As to Bishop, that statement does not accord with the award of compensatory damages to Bishop because the amount of the award appears to be based on evidence respecting Bishop's asserted financial loss caused by virtue of the termination of his employment.

The second clause of the sentence ("made their transfer to other Raymond James Financial Services, Inc. branch offices impossible as a practical matter") appears to be based on the fact that the Defendants were terminated without being afforded an opportunity to transfer to another Raymond James branch.   If that is what was intended as the basis for the award, it would be necessary on judicial review to ascertain whether, notwithstanding the plain language of the termination provision, transfer somehow had become a legal precondition to termination. That construction of the award is problematic because it contradicts the plain text of the termination provision.   Thus, it is, at least possible, and may even be likely, that the arbitrators had some other ground for making the award. Unfortunately, in order to uphold the award, the Court would be required to speculate or to make its ruling on the basis of a statement that contradicts the clear text of the termination

---

[3]  Hamant and Scanlon do not contend otherwise.

provision.    And,   to   do   that   would   amount   to   rewriting   the contract.

Of   equal   importance   is   the   final   sentence   of   the explanation   of   reasons   which   is   that   "[a]ny   and   all   claims relief   [sic]   not   specifically   addressed   herein,   including Claimants'   requests   for   punitive   damages,   are   denied."    In perspective   of   the   ruling   (taken   as   a   whole)   and   of   the description   of   claims   given   by   the   arbitrators,   that   statement must   mean   that,   at   least,   the   following   claims   were   denied:

- breach of promises and inducements

- interference with the performance of contractual promises and inducements

- violation of statutory public policy set forth in Va. Code § 13.1-558

- common law and statutory conspiracy

That then means that the award could have been intended to provide relief for the claims of:

- the alleged breach of fiduciary and legal duties, or

- the alleged violation of just and equitable legal principles of trade, or

- the alleged interference with, and unlawful termination of, Claimants' respective economic advantages

It is not possible to ascertain which of those claims the award actually intended to use as the predicate for liability or as the basis for the compensatory damages awarded.   However, considering that (1) in summarizing the claims, the panel said that all claims asserted by the Defendants "relate to the termination of Claimants' employment," (2) the frequent references to termination of employment in the statement of reasons (and in the briefs submitted to the panel), and (3) the fact that the Claimants' proof of damages consisted of the alleged loss of the benefits of the employment contract, it seems that the reason for the award is wrongful termination because there was, in the view of the arbitrators, not cause for the termination.   If that was the arbitrators' intent, judicial review must proceed with that in mind.

Another asserted basis for liability could be the perceived breach of fiduciary duties.   If that is what was intended, judicial review should proceed with that in mind.   And, the record suggests that judicial review as to the claims of Hamant and Scanlon might involve considerably different factors than would review of Bishop's claims.

Given the confused and contradictory reasoning in the award, it is necessary to assess in this case whether it is appropriate to remand the case to the arbitrators for a further

17

explanation of what award is intended for each claimant and what the basis for any such award is.

## DISCUSSION

Arbitration is a matter of contract.  See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).  Where the parties have agreed to arbitrate a dispute, judicial review of the arbitration decision is quite limited under the Federal Arbitration Act.  The judicial task "is limited to determining whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994). Arbitrators are not required to give reasons for an award. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 598 (1960).  Nonetheless, "in some cases reviewing courts must rely on the arbitrator's reasoning to determine whether he was applying contractual terms or 'his own brand of industrial justice' to resolve disputes."  Cannelton Industries, Inc. v. District 17, United Mine Workers of America, 951 F.2d 591, 594 (4th Cir. 1991).  Accordingly, it is the rule that:

> When an arbitrator does provide reasons for
> a decision and when those reasons are so
> ambiguous as to make it impossible for a
> reviewing court to decide whether an award
> draws its essence from its agreement, the
> court may remand the case to the arbitrator
> for clarification.

Id. (citations omitted) (emphasis added).  In Cannelton the

Court of Appeals found that it was unclear from the arbitrator's

award whether money damages were awarded because Cannelton had

violated contractual requirements and the terms of a previous

award or because Cannelton had violated a statute by contracting

out work for which, under a collective bargaining agreement,

union employees should have been employed.  Id.

Citing its decision in Clinchfield Coal Co. v. District 28,

United Mine Workers, 720 F.2d 1365 (4th Cir. 1983), the Fourth

Circuit noted that it previously had faced similar difficulties

with arbitration awards and held that, where the written

arbitration decision was so ambiguous as to prohibit a

determination of whether the award drew its essence from the

agreement, a remand to the arbitrator for clarification of the

reasoning was appropriate.  In particular, the Court of Appeals

held that "[a] court's power to vacate an award because of an

arbitrator's failure to address a crucial issue necessarily

includes a lesser power to remand the case to the same

arbitrator for a determination of that issue." Cannelton, 951 F.2d at 594.

Remand to an arbitrator for clarification is appropriate where an award is patently ambiguous, the issues submitted were not fully resolved, or when the language of the award has generated a collateral dispute. See Hilb, Rogal & Hobbs Co. v. Golub, 2006 WL 2403390, *7 (E.D. Va. 2006) (citing Oil, Chemical & Atomic Workers Int'l Union v. Rohm & Haas, Texas, Inc., 677 F.2d 492, 492 (5th Cir. 1982)).

Applying the first of those three grounds for remand, the court, in Brookdale Hospital Medical Center v. Local 1199, 107 F. Supp. 2d 283 (S.D.N.Y. 2000), remanded the case to the arbitrator for written clarification of the basis for an award granting reinstatement to alleged sexual harassers where it was not possible to ascertain whether the award violated public policy against sexual harassment because the arbitrator had not specified the factual predicate for her findings. The district court in Walter N. Yoder & Sons, Inc. v. Sheet Metal Workers' Local Union No. 100, 661 F. Supp. 1141 (D. Md. 1987), similarly found it necessary to remand the case to arbitrators for written clarification of the basis for decision where it was not possible to ascertain whether the award violated federal law or public policy, either of which ground would have foreclosed

enforcement of the award. Because the court was unable to ascertain whether violations of law or public policy existed, a remand was necessary to permit meaningful judicial review. In Ollett v. Department of the Air Force, 253 F.3d 692 (Fed. Cir. 2001), the Court of Appeals found it necessary to remand the arbitrator's decision because the award was unclear respecting the predicate for an award of back pay. See also, Hyle v. Doctor's Assocs, Inc., 198 F.3d 368 (2d Cir. 1999) (finding that district court should have remanded award to arbitrator where award granting damages and injunction against defendant was ambiguous due to the claimant specifying that it was seeking damages and injunction only against other defendant).

As explained above, the arbitrators in this case issued a written decision with an explanation of reasons for the award they entered. The explanation of reasons is so confusing and difficult to understand, particularly when viewed in perspective of the Statement of Claims and the issues, as framed by the text of the award, and as explained by the explanation of reasons given for the award, that it is impossible to conduct meaningful judicial review. Under certain circumstances, the award might be appropriately affirmed. Under other circumstances, the award may exceed the power of the arbitrator because of a disregard of a contractual provision controlling the rights and remedies

available to the parties.   The Court needs to understand the basis for the decision made by the arbitrators as to each of the three Claimants before it is possible to conduct meaningful judicial review.   Where, as here, the arbitrators have chosen to explain the reasons for their award, it is necessary that the explanation be sufficient to permit the process of judicial review to be intelligently conducted.   That simply is not possible in this case.   Accordingly, the case will be remanded to the arbitrators for a clarification of the basis upon which the award of compensatory damages was made to each of the Claimants.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and to the National Association of Securities Dealers for delivery to the panel that issued the award.

It is so ORDERED.

_____/s/_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 18, 2007